995 So.2d 631 (2008)
STATE of Louisiana
v.
Elizabeth ZACHARY.
No. 2008-K-634.
Supreme Court of Louisiana.
November 21, 2008.
Writ denied.
KIMBALL, J., additionally concurs in the denial of the writ and assigns reasons.
JOHNSON, J., dissents, would grant the writ application and assigns reasons.
KIMBALL, J., additionally concurring in the denial of the writ.
I write separately to set forth a more complete version of the facts and procedural history leading up to the instant writ application and this court's denial of the defendant's writ application.
The defendant, Elizabeth Zachary, was originally charged with her former co-defendant, Paul Weber, by grand jury indictment with first degree murder, a violation of LSA-R.S. 14:30, following the murder of George Taylor on the evening of July 9, 1993. The state then severed their cases and amended the indictment with respect to the defendant in this matter to charge her with obstruction of justice in violation of LSA-R.S. 14:130.1, thereby removing the charge of first degree murder. After trial before a 12-member jury, defendant was found guilty as charged on January 9, 1998. One month later, on February 19, 1998, the state filed an habitual offender bill, charging defendant as a second offender on the basis of a nolo contendere plea in Florida to burglary. In response, the defendant filed a motion to quash the habitual offender bill, alleging that the Florida record was devoid of evidence that defendant knowingly and voluntarily waived her rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). At the sentencing hearing, the State introduced evidence of defendant's predicate conviction, but had been unable to obtain a copy of the transcript of defendant's Florida plea colloquy. Following a hearing in May, 1998, the trial court took the matter under advisement, and on July 30, 1998, the trial court declined to adjudicate defendant an habitual offender because of defects in the plea form used by the state to prove the Florida conviction and sentenced her to ten (10) years imprisonment at hard labor, half of the minimum penalty the defendant would have faced if adjudicated and sentenced as a second offender under La. R.S. 15:529.1(A)(1)(a). State v. Zachary, 01-3191 (La. 10/25/02); 829 So.2d 405, 406. The defendant moved for reconsideration of her sentence, but the motion was denied.
*632 Thereafter, in September, 1999, the state fortuitously found a transcript of the plea colloquy for the Florida conviction, and at the end of November, 1999, moved to reopen the habitual offender proceedings. The trial court denied the State's motion and the State sought writs. Thereafter, the trial court submitted written reasons, at the State's request, for its decision to refuse to sentence defendant under La. R.S. 15:529.1. The First Circuit granted the State's application and remanded the case to reopen the habitual offender proceedings to allow the State to introduce the Florida transcript. State v. Zachary, 00-0579 (La.App. 1 Cir. 4/24/00). On remand, the trial court conducted a hearing, and the State was permitted to introduce a certified copy of the Florida transcript. Following that hearing, the trial court took the matter under advisement and ultimately rendered an opinion in which it found the State's evidence "constitutionally insufficient to hold a defendant a habitual offender." As a result, the trial court quashed the habitual offender bill against defendant, and the State sought writs. The First Circuit denied the State's writ. State v. Zachary, 01-2225 (La.App. 1 Cir. 11/5/01). Thereafter, this court granted the State's writ, reversed the trial court's finding that the State had failed to carry its burden under State v. Shelton, 621 So.2d 769 (La.1993), of showing that the defendant had entered an informed and voluntary no contest plea in Florida to a crime that is the equivalent of a felony offense in Louisiana, and remanded the matter. See, State v. Zachary, 01-3191, p. 6 (10/25/02), 829 So.2d 405, 408 (per curiam). On remand from this court, the court of appeal reversed the granting of the second motion to quash and remanded the case to the trial court for completion of the habitual offender proceedings. State v. Zachary, 01-2225 (La.App. 1 Cir. 6/16/03).
The defendant filed a third motion to quash the habitual offender bill.[1] Following a hearing, the trial court found the defendant to be a second-felony habitual offender. In the meantime, defendant secured her release on parole in 2001. Eventually, the litigation ran its course and after more delays the trial court resentenced defendant on October 26, 2005, as a second offender to twenty (20) years imprisonment at hard labor, the mandatory minimum term for a second offender convicted of obstruction of justice when the criminal proceeding involves a crime in which a sentence of death or life imprisonment may be imposed. R.S. 14:130.1(B)(1). Defendant appealed her conviction and sentence to the First Circuit, which affirmed in an unpublished opinion. State v. Zachary, 07-0678 (La. App. 1st Cir.12/21/07), 973 So.2d 176. The court of appeal denied rehearing on February 2, 2008. The instant application followed.
While the delays in bringing the habitual offender proceedings to a conclusion are unusual, defendant knew shortly after her conviction that the state would pursue enhanced punishment and the delays stemmed from protracted litigation over a variety of issues, including the sufficiency of the evidence documenting defendant's conviction in Florida used in the present case to enhance her sentence as a second offender. Moreover, as noted by the court of appeal, the delay in completing the habitual offender adjudication cannot be attributed to bad faith or vindictiveness on the part of the State. The delays were *633 largely a result of the defendant's exercise of her right to seek to quash the bill of information and the State's exercise of its right to seek review of adverse trial court rulings with the court of appeal and with this court. Consequently, in my opinion, no due process error has occurred as a result of the various delays in this matter. The majority correctly finds that this writ application should be denied.
JOHNSON, J., granting the writ application and assigning reasons.
The bare facts of this case raise several issues of concern. Defendant, Elizabeth Zachary, was present when her boyfriend, Paul Weber, killed George Taylor, and she assisted with covering up the crime. The state initially charged Weber and Zachary with 1st degree murder, by grand jury indictment. Zachary's case was severed, and charges amended to charge Zachary with obstruction of justice. Paul Weber, her former co-defendant, plead guilty to manslaughter and was sentenced to 40 years, twenty seven years of which were suspended, resulting in an actual sentence of incarceration of 13 years.
On January 9, 1998, after trial, Zachary was found guilty of obstruction of justice in violation of 14:130.1 and sentenced to ten years. A bill of information charging Zachary as a habitual offender was filed a month later, on February 19, 1998, because Zachary had a prior conviction for burglary in Florida. The defense filed a motion to quash the habitual offender bill on July 30, 1998. The trial court judge, Jefferson Hughes, while not ruling on the motion to quash, declined to adjudicate defendant a habitual offender because he found defects in the guilty plea form used by the Florida court in the prior burglary conviction. In fact, Judge Hughes made a hand written note in the record stating that he declined to sentence the defendant as a habitual offender "`to make up' for the fact that the actual killer, Paul Weber, was allowed to plea to a reduced charge [although] he was the actual killer". R., Vol. 2, p. 371. The state did not seek supervisory review of the court's determination that there were defects in the guilty plea. In 1999, the state, upon discovery of the guilty plea colloquy in the burglary case, moved to reopen the habitual offender hearing. This prompted the defense to file two additional motions to quash and resulted in protracted litigation[1]. When the state filed their motion to reopen the habitual offender hearing, Zachary was approximately a year and a half away from her parole release date. After serving nearly five years of her sentence for obstruction of justice, Zachary was released on parole in 2001.
The second hearing on the habitual defender motion was held on October 26, 2005, five years after the first hearing, and seven (7) years after filing the bill of information. At the hearing, a new trial court judge, Elizabeth Wolfe, sentenced Zachary to 20 years imprisonment, which was the mandatory minimum term for a second offender convicted of obstruction of justice when the underlying offense involves a crime in which the sentence of death or life imprisonment may be imposed[2].
The habitual offender statute contemplates an enhanced sentence based on the maximum sentence for an underlying offense. It should not prescribe a particular enhancement for a sentence, which by virtue of plea agreement and adjudication *634 cannot be imposed. Stated simply, Zachary, in effect, received an enhancement for a life sentence for which no one was ultimately convicted. The defendant is now sentenced to a total of 20 years imprisonment, without the benefit of parol or probation, for her part in covering up the death of George Taylor, while the killer, Paul Weber, has been sentenced to a total of 13 years in custody for the actual killing. The bill of information should have been re-filed to reflect the appropriate maximum sentence as per the adjudicated underlying offense, and I would grant the writ application to consider this disparity.
Considering the length of the delay in prosecution, the delay in the instant case is presumptively prejudicial to the defendant. The defendant has, from all accounts, busied herself with her own rehabilitation, excelling at university studies, maintaining gainful employment and is living as a productive member of society. Her case deserves more than a cursory review. She enrolled in, and completed, a paralegal studies certification course at Louisiana State University, re-married, attended church services devoutly, and from all accounts became a model citizen.
Seven (7) years is NOT a "reasonable time" for final adjudication of the habitual offender issue. A defendant charged in a criminal case has the right to be apprized of the undivided, complete consequences of a verdict of guilty within a reasonable time.[3] The trial court's written note that the court would not adjudicate defendant a habitual offender, effectively apprised the defendant that she would not be subject to the consequences of application of the habitual offender statute subsequent to her guilty plea. This Court held in State v. Muhammed[4], that "... the Sixth Amendment will not tolerate unlimited delays in imposing the "sentence for the offense of conviction." Although, the Court in Muhammed, found that completion of the sentence on an underlying offense does not necessarily preclude subsequent multiple offender sentencing, it recognized that fundamental fairness in determining whether a habitual offender hearing is held within a reasonable time, turns upon the facts of each individual case.[5] Relevant factors include: 1) length of delay, 2) reason for delay, 3) defendant's invocation of speedy trial rights, and 4) prejudice to the defendant. Specifically, this Court articulated... "a case by case evaluation is warranted to determine whether the proceeding has been properly concluded.[6]" This issue should be examined in light of the decision in State v. Broussard, 416 So.2d 109, 110-111 (La. 1982), which held that the filing of a habitual offender bill was not timely when filed 13 months after initial sentencing and just before the defendant's parole release.
*635 We should also examine whether relator's prior burglary conviction was final at the time of the commission of the current offense. In the instant case, the state did not seek supervisory review on the trial court's determination that the Florida guilty plea was defective. The trial judge apparently based his decision on the fact that the trial judge in Florida had not signed the guilty plea form, and the minutes of the proceeding indicated that the defendant had not received her Boykin rights[7]. The appellate courts are split on whether a conviction must be final to invoke the habitual offender statute. The Second, Third, Fourth and Fifth Circuits require finality, while the First Circuit rejects this conclusion.
The sentencing disparity in this case is glaring. Using the crime originally charged, as opposed to the crime of conviction in this habitual offender proceeding, results in an excessive sentence, particularly when we consider the light sentence received by the actual perpetrator of the crime. There are numerous examples in our jurisprudence where sentences involving the habitual offender law have been found excessive[8]. Additionally, since there is a great disparity regarding the circumstances under which each District Attorney elects to invoke the habitual offender statute, with some District Attorneys charging every defendant for whom the statute applies, and other District Attorneys not using it at all, the results vary from parish to parish, which gives rise to constitutional questions of equal protection under the law.
NOTES
[1] The record does not reflect a ruling on the third motion to quash the habitual offender bill but indicates a hearing on the motion was held, and the matter was continued on motion of the defense.
[1] The motions to quash resulted in appeals and writs taken to this Court. State v. Zachary, 01-3191, p. 6 (La. 10/25/02), 829 So.2d 405, 408.
[2] R.S. 14:130.1(b)(1).
[3] State v. Broussard, 416 So.2d at 110-111; State v. Perkins, 01-1092 at p. 4, 811 So.2d at 999.
[4] 875 So.2d 45, at 54 (La.2004).
[5] There are many instances when the state acted within the time limitation, but the case specific facts deemed the delay as unreasonable and "presumptively prejudicial." In State v. Reaves, 376 So.2d 136 (La.1979), the defendant was charged with possession of one marijuana cigarette, a simple misdemeanor offense. The trial was continued four times in the three and one-half months after charges had been filed. On the fourth trial date, the state moved for a continuance because its principal witness was absent. The trial court denied the continuance, and the state entered a nolle prosequi. The state then filed a new bill of information, which the defendant moved to quash on the basis that he had been denied his right to a speedy trial. The trial court granted the motion, and this Court affirmed the lower courts' rulings.
[6] Id at 55.
[7] R., Vol. 2, p. 407
[8] State v. Hayes, 739 So.2d 301 (La.App. 1st Cir.1999) (life sentence for theft over $500.00 found excessive), State v. Ballay, 727 So.2d 1199 (La.App. 4th Cir.1999) (15 years for third offense second degree battery found excessive), State v. Wilson, 803 So.2d 102 (La. App. 4th Cir.2001) (life sentence for third offense distribution of cocaine found excessive), State v. Robinson, 713 So.2d 828 (La. App. 5th Cir.1998) (life sentence for third offense robbery found excessive), State v. Rice, 807 So.2d 350 (La.App. 4th Cir.2002) (life sentence for third felony offender found excessive).