# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #45

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the 22nd day of October, 2019, are as follows:

**PER CURIAM:**

2019-KO-00203     *STATE OF LOUISIANA VS. HENRY PIERRE LYLES* (Parish of St. John)

We find that 2017 La. Acts 282, § 2, which provides that Act 282 shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017 is unequivocal, and therefore not subject to further judicial construction. For persons like defendant, whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed before that date, the full provisions of Act 282 apply. Accordingly, we find defendant was adjudicated and sentenced pursuant to the wrong version of the Habitual Offender Law. We reverse the court of appeal, vacate the habitual offender adjudication and sentence, and remand for further proceedings. On remand, the district court is directed to apply the version of the Habitual Offender Law, La.R.S. 15:529.1, as it was amended by 2017 La. Acts. 282, and before its amendment by 2018 La. Acts 542.

REVERSED, HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED, AND REMANDED WITH INSTRUCTIONS.

Chief Judge Susan M. Chehardy of the Court of Appeal, Fifth Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District, is recused in this matter.

Retired Judge Michael Kirby appointed Justice ad hoc, sitting for Clark, J.

Crichton, J., additionally concurs and assigns reasons.

## SUPREME COURT OF LOUISIANA

### No. 2019-KO-00203

### STATE OF LOUISIANA

**versus**

### HENRI PIERRE LYLES

### ON WRIT OF CERTIORARI TO THE FIFTH CIRCUIT COURT OF APPEAL, PARISH OF ST. JOHN THE BAPTIST

**PER CURIAM:***

We granted the application to determine whether defendant's habitual offender status and sentence are governed by La.R.S. 15:529.1 as it existed at the time of the commission of the crime, as it was amended by 2017 La. Acts 282, or as it was amended by 2018 La. Acts 542. Finding Act 282 applies, we reverse the court of appeal, vacate the habitual offender adjudication and sentence, and remand with instructions to the district court for further proceedings.

On November 11, 2016, a St. John the Baptist Parish jury found defendant guilty of an aggravated battery, La.R.S. 14:34, he committed on February 1, 2015. On November 16, 2016, the State filed a habitual offender bill of information alleging two predicate offenses—a 1991 distribution of cocaine conviction and a 2004 manslaughter conviction. On February 13, 2017, the district court adjudicated defendant a third-felony offender and sentenced him to the life sentence mandated by La.R.S. 15:529.1(A)(3)(b) (effective August 15, 2010). The court of appeal vacated the habitual offender sentence and remanded for resentencing because of the trial court's failure to vacate the underlying aggravated battery sentence. *State*

---

* Retired Judge Michael Kirby appointed Justice ad hoc, sitting for Justice Marcus R. Clark. Chief Judge Susan M. Chehardy of the Court of Appeal, Fifth Circuit, assigned as Justice pro tempore, sitting for the vacancy in the First District, is recused in this matter.

*v. Lyles*, 17-0405 (La. App. 5 Cir. 2/21/18), 239 So.3d 1055. After remand, the district court resentenced defendant on March 12, 2018, to the same term of imprisonment under the same provision of law. Defendant appealed.

On appeal, defendant contended that the Habitual Offender law, as amended by 2017 La. Acts 282, should be applied to him. Among other changes, this act reduced from ten to five years the time allowed—commonly known as the cleansing period—between expiration of correctional supervision for one offense and commission of the next offense on the habitual offender ladder.[1] Defendant's probation for distribution of cocaine expired in 1996 and he did not commit manslaughter until 2003. Therefore, defendant contended he was a second-felony offender subject to a sentencing range of 3 1/3 to 20 years imprisonment under the amended law.

Defendant relied on Section 2 of Act 282, which provides, "This Act shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." The State, however, relied on a subsequent amendment to the Habitual Offender Law in 2018 La. Acts 542 to argue that the district court applied the correct version of the Habitual Offender Law (i.e., the one in effect when defendant committed the crime in 2015). According to the State, despite the language of Act 282, the legislature subsequently clarified its intent with Act 542, which added La.R.S. 15:529.1(K).

The court of appeal agreed with the State, and found the district court sentenced defendant under the correct version of the Habitual Offender Law:

_____

[1] In addition to the reduction from ten to five years, the court of appeal noted that Act 282 also removed persons with a current or prior felony that was a violation of the Uniform Controlled Dangerous Substance Law punishable for ten or more years from the group of persons subject to a life sentence as a third felony offender. *State v. Lyles*, 18-0283, pp. 4 (La. App. 5 Cir. 12/27/18), 263 So.3d 930, 935. Furthermore, Act 282 significantly reduced the sentencing ranges at each rung of the habitual offender ladder.

2

Upon review, we rely on the well settled jurisprudence that the law in effect at the time of the offense is determinative of a defendant's punishment, including for habitual offender proceedings. [*State v. Parker*, 03-0924 (La. 4/14/04), 871 So.2d 317; *State v. Sugasti*, 01-3407 (La. 06/21/02), 820 So.2d 518; *State v. Williams*, 03-0571 (La. App. 5 Cir. 11/12/03), 862 So.2d 108.] Further, we find that by enacting subsection K, the legislature clarified its original intent that the date of commission of the underlying offense be used to determine the sentencing provision applicable to a habitual offender, except as otherwise explicitly provided in the statute. Therefore, after review, we find that the Habitual Offender Law in effect at the time of the commission of defendant's underlying offense of aggravated battery should be applied in determining defendant's habitual offender sentence, and the trial court did so correctly when imposing defendant's enhanced sentence of life imprisonment without benefits.

. . . .

Accordingly, we find that the 2015 version of La. R.S. 15:529.1(A)(3)(b) is the sentencing provision applicable to defendant herein because his third felony (the aggravated battery conviction) and his predicate conviction of manslaughter are crimes of violence under La. R.S. 14:2(B)(5) and La. R.S. 14:2(B)(4), respectively. Additionally, defendant's 1991 conviction for distribution of cocaine in violation of La. R.S. 40:967(A) was a violation of the Uniform Controlled Dangerous Substance Law punishable by ten years of imprisonment or more. La. R.S. 40:967(B)(4). Under the habitual offender statute as it existed at the time of the commission of the underlying offense of aggravated battery, defendant was subject to an enhanced mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. See La. R.S. 15:529.1(A)(3)(b). For the foregoing reasons, we find that the trial court correctly applied the Habitual Offender Law in effect in 2015 in sentencing defendant.

*State v. Lyles*, 18-0283, pp. 9–10 (La. App. 5 Cir. 12/27/18), 263 So.3d 930, 938–939.

The question presented is one of statutory interpretation, which begins "as [it] must, with the language of the statute." *Bailey v. United States*, 516 U.S. 137, 143, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). "Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning." *State v. Oliphant*, 12-1176, p. 5 (La. 3/19/13), 113

3

So.3d 165, 168; *see also Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("In any event, canons of construction are no more than rules of thumb to help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citations omitted).

As noted above, the relevant portion of Act 282 provides: "This Act shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." 2017 La. Acts 282, § 2. By contrast, Act 542 added new Subsection (K) to R.S. 15:529.1:

> K. (1) Except as provided in Paragraph (2) of this Subsection, notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed.
>
> (2) The provisions of Subsection C of this Section as amended by Act Nos. 257 and 282 of the 2017 Regular Session of the Legislature, which provides for the amount of time that must elapse between the current and prior offense for the provisions of this Section to apply, shall apply to any bill of information filed pursuant to the provisions of this Section on or after November 1, 2017, accusing the person of a previous conviction.

2018 La. Acts 542, § 1 (effective August 1, 2018).

We note at the outset, from the plain language of these provisions in conjunction with the effective dates of the acts, the legislature appears to have created three categories of persons potentially affected by these provisions:

1. There are persons—like the present defendant—whose convictions became

4

final on or after November 1, 2017, and whose habitual offender bills were filed before that date. Those defendants would be eligible to receive the benefits of all ameliorative changes made by Act 282.

2. There are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed between that date and August 1, 2018 (the effective date of Act 542). Those persons would be eligible to receive the benefit of the reduced cleansing period,[2] and they may also have colorable claims to the other ameliorative changes provided in Act 282, although we need not decide that question today.

3. Finally, there are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed on or after August 1, 2018. They would receive the reduced cleansing period by operation of Subsection K(2) added by Act 542 but their sentences would be calculated with references to the penalties in effect of the date of commission in accordance with Subsection K(2) added by Act 542.

The State urges, and the court of appeal found, essentially, that the legislature intended what it wrote in Act 542 but did not intend what it wrote in Act 282, and therefore Act 542 should be applied because it "clarifies" Act 282. However, the language indicating that Act 282 "shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017" is quite clear. Therefore, we must presume the legislature meant what it said, and the judicial inquiry ends there.

---

[2] Notably, such a person would receive the reduced cleansing period regardless of whether Act 282 or Act 542 is applied.

5

The State, however, attempts to breathe ambiguity into this language by questioning when a conviction becomes final. That question is readily answered by Code of Criminal Procedures articles 914 and 922, and the State's desire that finality be determined differently for purposes of the Habitual Offender Law than in other contexts does not suffice to introduce ambiguity into the clear language the legislature chose.[3]

We find that 2017 La. Acts 282, § 2, which provides that Act 282 "shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017" is unequivocal, and therefore not subject to further judicial construction. For persons like defendant, whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed before that date, the full provisions of Act 282 apply. Accordingly, we find defendant was adjudicated and sentenced pursuant to the wrong version of the Habitual Offender Law. We reverse the court of appeal, vacate the habitual offender adjudication and sentence, and remand for further proceedings. On remand, the district court is directed to apply the version of the Habitual Offender Law, La.R.S. 15:529.1, as it was amended by 2017 La. Acts. 282, and before its amendment by 2018 La. Acts 542.

**REVERSED, HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED, AND REMANDED WITH INSTRUCTIONS**

---

[3] The State cites La.C.Cr.P. art. 934(3) for the proposition that "[c]onvicted means adjudicated guilty after a plea or after trial on the merits," and the State contends that this convicted status equals finality, at least for the purposes of the Habitual Offender Law. But had the legislature wished to craft Act 282 to reach convictions occurring after November 1, 2017, it could have easily done so by stating that Act 282 would become effective and have prospective application only to offenders "convicted on or after" that date. We further note that the text of the Habitual Offender Law has made no mention of finality from its inception until the adoption of Act 282.

10/22/19

No. 2019-KO-00203

STATE OF LOUISIANA

v.

HENRI PIERRE LYLES

ON WRIT OF CERTIORARI TO THE FIFTH CIRCUIT
COURT OF APPEAL, PARISH OF ST. JOHN THE BAPTIST

**Crichton, J., additionally concurs and assigns reasons:**

Because the Habitual Offender Law is punitive and demands strict construction, I agree with the per curiam – as I must. *See*, *e.g.*, *State v. Carr*, 99-2209 (La. 5/26/00), 761 So. 2d 1271, 1274 ("It is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. Thus, criminal statutes are given a narrow interpretation and any ambiguity . . . is resolved in favor of the accused and against the State.") (internal citations omitted). However, in light of the now two crimes of violence committed by this defendant, the instant Aggravated Battery (R.S. 14:2(B)(5)), and the predicate 2004 manslaughter conviction (R.S. 14:2(B)(4)), I—like the trial judge—believe that the defendant should receive a substantial and meaningful sentence of hard labor with the Department of Corrections.